**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

|  |  |  |
|---|---|---|
| FREDERICK CARLTON "CARL" LEWIS, | : : : | |
|  | : | Civil Action No. |
| Plaintiff, | : | 11-2381-NLH |
|  | : | |
| v. | : | **SUPPLEMENTAL OPINION** |
|  | : | |
| SECRETARY OF STATE KIM GUADAGNO, et. al., | : : : | |
|  | : | |
| Defendants. | : | |

---

**HILLMAN, District Judge**

This matter comes before the Court upon the application of the Plaintiff, Frederick Carlton "Carl" Lewis, for a preliminary injunction barring Defendants from removing his name from a primary ballot.  Plaintiff contends that the provision of New Jersey's state constitution relied upon to remove his name from the ballot violates the Equal Protection Clause of the Fourteenth Amendment.  On April 28, 2011, after a hearing and oral argument, the Court concluded Plaintiff failed to demonstrate a likelihood of success on the merits, in that <u>Sununu v. Stark</u>, 383 F.Supp. 1287 (D.N.H. 1974), aff'd mem., 420 U.S. 958 (1975), was binding and controlling precedent.  The Court further opined that even if the Supreme Court's summary affirmance of <u>Sununu</u> were not controlling precedent, this Court would apply a strict scrutiny standard, adopt the reasoning of the <u>Sununu</u> three judge panel, and find that the constitutional provision at issue furthers a compelling state interest.  In this Opinion, the Court will

provide a written explanation for its April 28, 2011 oral decision.

## I.    __BACKGROUND__

On April 11, 2011, Plaintiff Frederick Carlton "Carl" Lewis[1], in accordance with New Jersey election law, filed his nomination petition seeking to have his name placed on the ballot for the June 7, 2011 Democratic Party Primary Election for the office of New Jersey State Senate, 8th Legislative District. Several days later, William Layton and Ted Costa, interveners in this action, contested the validity of Plaintiff's candidacy. They specifically argued that Plaintiff did not meet the state constitution's four-year durational residency requirement for the office of state senator.  After a hearing on April 20, 2011, an administrative law judge determined the challengers of Plaintiff's candidacy failed to prove that Lewis did not meet the residency requirement.  Several days later, on April 26, 2011, Defendant Secretary of State Kim Guadagno (hereinafter "Defendant") reversed the decision of the administrative law judge and concluded that Plaintiff was not a resident of the State of New Jersey for the constitutionally prescribed time period.  Thus, Plaintiff's name was ordered removed from the

_____

[1]  Carl Lewis represented the United States in the 1984, 1988, 1992 and 1996 Olympic games.  He won nine gold medals in track and field and is considered by some as the greatest Olympian of all time.

ballot.  On the same day, April 26, 2011, Plaintiff filed a
Verified Complaint in federal court alleging that Defendant
Secretary of State's decision violated the Equal Protection
Clause of the Fourteenth Amendment and the New Jersey Civil
Rights Act.  Plaintiff additionally filed a Motion for a
Temporary Restraining Order and Order to Show Cause Why a
Preliminary Injunction Should Not be Entered.  After a hearing
and oral argument on April 28, 2011, the Court denied Plaintiff's
Motion.

## II.  __ANALYSIS__

     This Opinion is intended to supplement the Court's oral
decision denying Plaintiff's Motion.  Plaintiff requested that
the Court enter a preliminary injunction enjoining Defendants
Atlantic County Clerk, Burlington County Clerk and Camden County
Clerk (hereinafter "Defendant County Clerks") from printing or
mailing the primary election ballots without his name.  In
support of his Motion, Plaintiff claimed that the New Jersey
State Constitution's four-year residency requirement for a
candidate for the office of state senator violated the Equal
Protection Clause of the Fourteenth Amendment.[2]  The
Constitutional provision states, in pertinent part, that "[n]o
person shall be a member of the Senate who shall not . . . have

---

     [2]  The Court interpreted this claim as a facial challenge to
the provision.

3

been a citizen and resident of the State for four years . . . before his election." N.J.S.A. Const. Art. 4, § 1, ¶ 2. In response to Plaintiff's claims, Defendants Secretary of State and Attorney General contended that the Court should abstain under the <u>Pullman</u> and <u>Younger</u> doctrines.[3] The Defendants further argued that if the Court declined to abstain, it should deny Plaintiff's Motion because he fails to demonstrate a likelihood of success on the merits.

**A. Pullman**

In <u>Railroad Commission of Texas v. Pullman Co.</u>, 312 U.S. 496 (1941), the Supreme Court stated that when considering whether to abstain, a court shall consider three specific preconditions: "(1) uncertain issues of state law underlying federal constitutional claims brought in federal court, (2) state law issues amenable to interpretation that would obviate the need for or narrow the scope of the federal constitutional claims, and (3) conditions such that an erroneous federal court interpretation of state law would disrupt important state policies." <u>Ohad Assocs. v. Twp. of Marlboro</u>, No. 10-2183, 2010 WL 3326674, at * 3 (D.N.J. Aug. 23, 2010) (citing <u>Chez Sez III Corp. v. Twp. of Union</u>, 945 F.2d 628, 631 (3d Cir.1991)). "In addressing an abstention

---

[3]  During oral argument, Defendants appeared to concede that the Court could exercise its jurisdiction to address whether, on its face, the Constitution's four-year residency provision violated the Equal Protection Clause of the Fourteenth Amendment.

claim, a district court must first consider whether the
particular case falls within the ambit of <u>Pullman</u> as defined by
these criteria, and must then make a discretionary determination,
based on the weight of these criteria and other relevant factors,
as to whether abstention is in fact appropriate." <u>D'Iorio v.
Delaware County</u>, 592 F.2d 681, 686 (3d Cir. 1978).

    The Court concluded that the present matter failed to
implicate the first and third prongs of <u>Pullman</u>.  With respect to
the first prong, the issue before the Court, while important to
the parties, was exceptionally narrow.  The Court only decided
whether New Jersey's constitutional provision requiring
candidates for state senate to reside in New Jersey for at least
four-years was, on its face, violative of the federal
constitution.  This question is purely one of federal law, which
can be resolved entirely without opining on, or resolving, any
issue of state law.  Consequently, the Court did not need to
address any uncertain issues of state law.

    The third prong was also not implicated.  The Court did not
interpret any provisions of state law, but merely determined
whether the provision in the state constitution violated the
Equal Protection Clause.  Furthermore, in the present matter, the
Court concluded that the provision did not violate the Fourteenth
Amendment.  Therefore, the Court's decision did not disrupt any
state interests.

**B. Younger Abstention**

"Under Younger v. Harris, 401 U.S. 37 (1971), federal courts must abstain in certain circumstances from exercising jurisdiction over a claim where resolution of that claim would interfere with an ongoing state proceeding." Miller v. Mitchell, 598 F.3d 139, 145 (3d Cir. 2010). Abstention, however, is only appropriate "when (1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise federal claims." Kendall v. Russell, 572 F.3d 126, 131 (3d Cir. 2009).

In rendering its decision on abstention, the Court was especially mindful of the delicate balance between state and federal interests. Specifically, the Court recognized that the underlying principles of Younger are grounded in notions of comity, and the idea that, in some instances, federal courts should not interfere with state courts or state sovereignty. Although a literal application of Younger may suggest this Court should abstain, (1) the binding Supreme Court authority addressing the narrow issue presented and (2) the extraordinary pressing need for resolution of the federal issue justified the Court's exercise of jurisdiction.

The Court was asked to address whether, on its face, Article 4, Section 1, Paragraph 2 of the New Jersey Constitution violated

the Equal Protection Clause of the Fourteenth Amendment.  This
issue is not only a question of substantial federal concern, but
also is controlled, as discussed in greater detail below, by
binding Supreme Court precedent.  Consequently, to resolve the
federal constitutional issue this Court did not need to apply or
interpret any provisions of the state constitution.  Rather, in
deciding the narrow issue presented, we only needed to examine
whether the provision, on its face, violated the Constitution,
and this inquiry merely required an application of <u>Sununu</u>.[4]

The Court also concluded that a quick resolution of this
matter was of paramount concern.  *See* <u>Diamond D Constr. Corp. v.
McGowan</u>, 282 F.3d 191, 201 (2d Cir. 2002) (stating that an
exception to <u>Younger</u> abstention requires "extraordinarily
pressing need for immediate federal equitable relief") (quoting
<u>Kugler v. Helfant</u>, 421 U.S. 117, 124-25 (1975)).  According to
Defendant County Clerks, the printing of the primary election

---

[4]  Furthermore, as discussed in the merits section, this
Court upheld the constitutionality of the provision at issue
because of binding Supreme Court precedent.  In such a situation
where an inferior federal court cannot engage in its own analysis
of the issue because the precise legal question has already been
resolved by a higher court, in this instance the Supreme Court no
less, we find that the principles behind <u>Younger</u> are
substantially less pronounced.  This conclusion is especially
true when a court's ultimate resolution is to uphold the state
action, law, or constitution provision.  When a court affirms a
state's law, the notions of comity and concern for the respect of
states are simply not present because the delicate balance
between state and federal relations is not interfered with or
otherwise disturbed.

ballots had to commence in the very near term in order to meet
state statutory requirements designed to insure that New Jersey
voters have sufficient time not only to review the ballots but
also to participate in the political process and educate
themselves about the candidates and their positions.  This Court
felt it necessary, therefore, to resolve, as soon as possible,
the issue of the requested federal equitable relief in the forum
chosen by the plaintiff.[5]  When faced with an extremely time
sensitive matter that is both pending and ripe for a decision, it
would have been inappropriate for this Court, under the unique
circumstances present here, to abstain from rendering a judgment.
Thus, in order to resolve a matter of substantial public interest
in a timely matter and with the tacit or express approval of the
parties, the Court determined to address the merits of the case.

### C. The Merits

   "[T]he grant of injunctive relief is an extraordinary
remedy, which should be granted only in limited circumstances."
Frank's GMC Truck Ctr., Inc. v. General Motors Corp., 847 F.2d
100, 102 (3d Cir. 1988) (internal citations omitted).  In
determining whether to issue a preliminary injunction, the Court

_____

   [5] We recognize that at the time of this Court's oral ruling
a judicial proceeding in a forum competent to consider the
federal constitutional claim was pending.  However, final briefs
had not yet been filed in the state appellate division and while
we were confident that the state courts would act promptly, the
actual date and the scope of that ruling was unknown at the time
this Court ruled.

must consider whether:  "(1) [there is] a likelihood of success on the merits; (2) he or she will suffer irreparable harm if the injunction is denied; (3) granting relief will not result in even greater harm to the nonmoving party; and (4) the public interest favors such relief." Bimbo Bakeries USA, Inc. v. Botticella, 613 F.3d 102, 109 (3d Cir. 2010).  "The injunction should issue only if the plaintiff produces evidence sufficient to convince the district court that all four factors favor preliminary relief." Am. Tel. and Tel. Co. v. Winback and Conserve Program, Inc., 42 F.3d 1421, 1427 (3d Cir. 1994) (quoting Merchant & Evans, Inc. v. Roosevelt Bldg. Prods., 963 F.2d 628, 632-33 (3d Cir. 1992)).

In the present matter, after the April 28, 2011 hearing and oral argument, the Court concluded Plaintiff had failed to establish a likelihood that he would prevail on the merits at the final hearing.[6]  This decision was grounded in two alternative rulings: (1) Sununu was binding and controlling precedent and (2) even if the Supreme Court's summary affirmance of Sununu were not controlling precedent, this Court would apply the strict scrutiny standard as had the Sununu district court, adopt the reasoning of that decision and find that the constitutional provision at issue, Art. IV, Section I, Paragraph 2, furthered a compelling state interest.

---

[6]  The Court concluded that the other three prongs of the test weighed in Plaintiff's favor.

### 1.  __Sununu__ is Controlling Precedent

The Court found Sununu to control the outcome of this matter.  In Sununu, a three-judge panel concluded that the New Hampshire Constitution's seven-year durational residency requirement for the office of state senator did not violate the Equal Protection Clause of the Fourteenth Amendment because the state articulated a compelling interest for the provision. Sununu, 383 F.Supp. at 1290.  As indicated above, in a summary affirmance, the United States Supreme Court upheld the district court's opinion.[7]  Unlike a denial of a petition for writ of certiorari[8], a summary affirmance is a decision of the Supreme Court affirming the merits of a lower court's judgment. *See* Metromedia, Inc. v. City of San Diego, 453 U.S. 490, 499 (1981) ("This Court has repeatedly stated that although summary dispositions are decisions on the merits, the decisions extend only to the precise issues presented and necessarily decided by those actions"); *see also* Hicks v. Miranda, 422 U.S. 332, 344-345

---

[7]  Approximately a year before Sununu, a three-judge panel in the District of New Hampshire decided Chimento v. Stark,353 F.Supp. 1211 (D.N.H. 1973).  In that case the panel concluded that a seven-year durational residency requirement for the office of governor did not violate the Equal Protection Clause of the Fourteenth Amendment. Chimento, 353 F. Supp. at 1218.  This case was also summarily affirmed by the United States Supreme Court. 414 U.S. 802 (1973).

[8]  *See* United States v. Carver, 260 U.S. 482, 490 (1923) ("The denial of a writ of certiorari imports no expression of opinion upon the merits of the case, as the bar has been told many times").

(1975) (noting "that the lower courts are bound by summary decisions by this Court until such time as the Court informs (them) that (they) are not").

Several courts have specifically found <u>Sununu</u> binding and controlling precedent.  In <u>City of Akron v. Beil</u>, the Sixth Circuit Court of Appeals opined that in <u>Sununu</u> and <u>Chimento</u> the Supreme Court summarily affirmed "that seven year durational residency requirements are not violative of the equal protection clause." <u>City of Akron v. Beil</u>, 660 F.2d 166, 168 (6th Cir. 1981).  With respect to the precedential value of these summary affirmances, the Sixth Circuit stated "[w]hile it is true that summary affirmances must be read with care, there can be no doubt that these recent cases hold that some durational residency requirements are constitutionally permissible. . . . That some durational residency requirements are constitutional was essential to disposition of these cases.  Thus we are of the opinion that these recent Supreme Court affirmances control the outcome of the present controversy." <u>Id.</u>

Although not directly addressing the precedential value of <u>Sununu</u>, the Second Circuit Court of Appeals, in dicta, stated "[w]e, accordingly, do not reach the question of the constitutional validity of the five-year duration-of-residency requirement, though we should indicate that we have grave doubt as to whether this matter is not foreclosed by the action of the

Supreme Court in summary affirmances of . . . seven-year residency duration statutes" in <u>Sununu</u>.  <u>Billington v. Hayduk</u>, 565 F.2d 824, 826 (2nd Cir. 1977).  The Supreme Court itself, in a plurality opinion, recognized the precedential value of its summary affirmance in <u>Chimento</u>[9], and opined that in that case "we upheld a 7-year durational residency requirement for candidacy." <u>Clements v. Fashing</u>, 457 U.S. 957, 967 (1982) (Rehnquist, J., plurality).

Other courts have similarly concluded that <u>Sununu</u> constitutes binding authority.  *See, e.g.* <u>Joseph v. City of Birmingham</u>, 510 F.Supp. 1319, 1326 (D. Mich. 1981) ("Moreover, the Supreme Court has directly held that some durational residency requirements for candidates are constitutional.  In <u>Sununu</u> . . . the Supreme Court affirmed [a] lower court judgment[] upholding New Hampshire's seven year durational residency requirement for state senatorial . . . against equal protection challenges"); *see also, e.g.,* <u>Schiavone v. Destefano</u>, 852 A.2d 862, 867 (Conn. Super. Ct. 2001) ("Since <u>Akron</u>, no federal court has struck down a durational residency requirement for political office. . . until such time as the Supreme Court changes its mind, lower courts are not free to invalidate such

_____

[9]  As discussed in an earlier footnote, both <u>Chimento</u> and <u>Sununu</u> involved the New Hampshire Constitution's seven-year durational residency requirement for candidates for the public offices of state senator and governor.

12

requirements (unless those requirements exceed seven years) on
federal equal protection grounds").

In Metromedia the Supreme Court opined that the
precedential value of summary affirmances is limited to the
"precise issues presented and necessarily decided by those
actions." Metromedia, Inc., 453 U.S. at 499.  This Court
interpreted Metromedia's command as indicating that the
precedential value of summary affirmances should not be
overstated as a legal matter, nor should they be interpreted as
applicable beyond the facts of the case.  In other words, a
summary affirmance should be narrowly interpreted and should only
be binding authority in a case that presents the same legal issue
decided in the earlier case and only when the facts are not
materially different.  Although Plaintiff attempts to
differentiate the present matter from Sununu, his efforts are
futile because any distinction is immaterial.

In support of his position Plaintiff only argued one
dissimilarity and noted a second.  First, he argued that in
Sununu, decided in 1974, the people of New Hampshire had directly
rejected any changes to the durational residency requirement for
state senator only eight years before, in 1966.  In the present
matter, however, the last direct vote on the particular provision
of the New Jersey Constitution at issue here occurred in 1947.
Additionally, the Plaintiff noted that the ratio between the

13

number of members of the upper house and the lower house is
smaller in New Jersey, suggesting a greater parity between the
two than might exist in New Hampshire.  The Court does not find
these differences substantial enough to undermine the
precedential value of Sununu.

Moreover, these two minor differences are far outweighed by
the similarities between the cases.  Both cases involve a
bicameral legislature, a substantial difference in the length of
office between a state senator and a member of the lower house,[10]
and similarities in the job function of a state senator, which,
as stated in Defendant State's brief, is one of the most
important positions within the State government.  Members of the
New Jersey and New Hampshire Senate hold and exercise special
powers, including the trial of impeachments.[11]  Additionally,
both cases involve a constitutional provision that was at least
twice approved by voters in a direct vote and existent in the
constitutions for more than 150 years.  Ultimately, no

---

[10]  We note that in New Jersey this difference between the
terms of office is mirrored in the durational residency
requirements found in the state constitution.  In New Jersey, as
in New Hampshire, the longer the term of office the longer the
durational residency requirement.

[11]  It should be noted that the members of the New Jersey
Senate have even greater power than their counterparts in New
Hampshire.  New Jersey Senators also have the power to advise and
consent on the confirmation of judicial and executive officers.
In New Hampshire these duties are performed by a board of
councilors.  Albeit this is a distinction between the two cases,
it cannot preclude Sununu's binding effect.

discernable difference existed between the facts of <u>Sununu</u> and the facts of the present matter.  In fact, the facts could not be more on all fours.  Consequently, the Court was bound to follow the Supreme Court's decision.  It had no discretion to conclude otherwise because <u>Sununu</u> and the present matter are in all material ways legally and factually identical.[12]

### 2.  Strict Scrutiny Analysis

Even if the Court did not find <u>Sununu</u> controlling, it would still conclude that Plaintiff would not prevail on the merits.  Despite language in <u>Clements</u>[13] that may suggest a standard of review lower than strict scrutiny, the Court applied the higher standard because Plaintiff described a group of significant

---

[12]  During oral argument Plaintiff contended that the Court was bound by the Third Circuit's decision in <u>Wellford v. Battaglia</u>. 485 F.2d 1151 (3d Cir. 1973)(per curiam).  In <u>Wellford</u>, the Third Circuit Court of Appeals, in a per curiam opinion, upheld the district court's conclusion that a city charter's requirement that a candidate for mayor be a resident of the municipal for at least five years at the time of his election violated the Equal Protection Clause of the Fourteenth Amendment. For several reasons the Court does not find this case binding. First, it was decided in September 1973, which was approximately one month before the Supreme Court summarily affirmed <u>Chimento</u>, and one and a half years before the Court summarily affirmed <u>Sununu</u>.  Second, the law at issue in <u>Wellford</u> was a provision of the city charter, not a state constitutional provision.  Finally, based upon the facts, it appears that the dispute was an intrastate, not an interstate, matter.

[13]  The Court opined that a durational residency requirement for candidacy, is the "sort of insignificant interference with access to the ballot need only rest on a rational predicate in order to survive a challenge under the Equal Protection Clause." <u>Clements</u>, 457 U.S. at 968 (Rehnquist, J., plurality).

rights that would be implicated, including the right to travel, right to vote and right to participate in political office. Although standing alone there is no fundamental right to run for political office, see Bullock v. Carter, 405 U.S. 134, 143 (1972) (concluding that candidate restrictions have not been granted the same fundamental rights status as voting), when combined with the other rights discussed, which in our legal hierarchy are some of the most important rights protected by the Constitution, the Court concluded that it should apply the strict scrutiny standard.[14]  To withstand a strict scrutiny challenge, the State must prove that the challenged law furthers a compelling governmental interest.  In applying strict scrutiny analysis, the Court wholly adopted the very reasoned rationale articulated by the district court in Sununu and Chimento for why a durational residency requirement furthered a compelling interest.

Presently, the State met its burden and articulated a compelling interest for its four-year residency requirement. First, the State has a compelling interest to ensure that its senate candidates are familiar with the district because of the important duties and authority a New Jersey state senator

---

[14]  By applying the strict scrutiny standard, the Court recognized that if it were to apply the rational basis standard, the result would remain the same and the constitutional provision would be upheld.  Furthermore, because the Court applied essentially the same reasoning of the District Court in Sununu, it felt further bound to apply the heightened standard of review.

possesses.  As articulated by the State Defendants, the office of senator is of ancient origin and its more modern version dates to the American Revolution.  A senator exercises a variety of powers, including trial of impeachments and advice and consent on the appointment of judges, executive cabinet officials and prosecutors.  State senators also vote for governor and lieutenant governor in the event of a tie, stand in the line of succession to the governorship, may exercise the executive power when the governor and lieutenant governor are not in the State, and, just to name a few additional powers, exercise police and taxing powers.

Furthermore, a senator's authority is not limited to a city, district or municipality.  Rather, the entire State is affected by his or her decisions.  In order to properly perform these functions, it is of upmost importance for the senator to be intimately familiar with not only his or her district, its people, its problems and its issues, but also the issues and political structure of the entire State.  This type of familiarity does not occur overnight and cannot be gleamed from watching television, reading the newspaper or surfing the Internet.  Ultimately, the State has a compelling interest that this individual not only possess knowledge of the operation of the State Government, but also to ensure that he or she is sufficiently well-versed in the needs and interests of all the

17

State's citizens.  Without this type of knowledge of the needs of both the government and the governed, a senator cannot wield the aforementioned important powers and properly exercise this significant responsibility.[15]

The State also provided a second compelling interest as justification for its four-year residency requirement.  According to the State, the people of the district need time to become familiar with a candidate and their position on the substantive issues of the day.  Although Plaintiff's counsel described Plaintiff as the "Bruce Springsteen of track", his fame and notoriety are not directly relevant to the proper exercise of a position of public trust.  The State has a compelling interest in insuring the voters become familiar with the candidate's platform.  This type of familiarity develops over time and requires the candidate to "press the flesh."  In order to become an effective state senator, a candidate must live among and interact with his or her potential constituents.  Even in the age of the Internet, there is a meaningful difference between what one hears or reads on a computer screen and what one learns and

---

[15]   During oral argument Plaintiff contended that the State cannot justify why the residency requirement for a state senator was two years longer than the residency requirement of a member of the general assembly.  The Court concluded that the State is justified in making this distinction because (1) assembly members serve two year terms and senators serve four year terms and (2) a state senator exercises greater power and has more responsibilities than a member of the general assembly.

hears at the local coffee shop or firehouse.

The cases Plaintiff relied upon to demonstrate that the State does not have a compelling interest are distinguishable because they address intrastate durational residency requirements. In the present matter, however, an interstate requirement is at issue. In other words, Plaintiff relies upon cases that address a candidate's ineligibility because he failed to live in the proper area of the state, not the state itself. This intrastate/interstate dichotomy is of primary significance.

First, the intrastate cases invalidate local ordinances or state statutes rather than organic law of state constitutional dimension. Second, the federal constitutional concerns and the opportunity for an improper motive to bar an otherwise legitimate candidate, may be more pronounced where the case involves a narrowly defined geographical area and a less significant political subdivision. As an example, imagine a city which annexes an adjoining municipality and imposes a durational residency requirement to run for office. This action would essentially disenfranchise the residents of the annexed municipality because they would be precluded from running for municipal office or city government by the simple fact of having been annexed.[16] In this example, the state or township cannot

---

[16]  This type of situation could further implicate the Equal Protection Clause because it might adversely impact a protected class of individuals, such as a minority or ethnic group.

assert any compelling justification or discernable reason why
someone from one side of town could not be equally competent as
someone from the other side of the town to serve in the city
government. *See, e.g.,* Callaway v. Samson, 193 F. Supp.2d 783
(D.N.J. 2002) (finding a residency restriction that prevents a
candidate from moving within the city as unconstitutional); *see
also* Robertson v. Bartels, 150 F. Supp.2d 691 (D.N.J. 2001)
(holding that a residency requirement requiring a candidate, a
lifelong resident of New Jersey, for the New Jersey general
assembly to reside within his district for one year prior to the
election as unconstitutional because as a result of redistricting
the candidate's home was moved from one district to another, thus
he could no longer meet the residency requirement).

Both Sununu and the present matter, however, are different.
Absent invidious discrimination, the federal constitutional
concerns present in interstate matters are not as pronounced as
they are intrastate cases.  In contrast, in interstate cases the
interests of the state are substantially greater.  For example,
states have an interest in insuring that candidates for state
office are familiar with the issues facing that sovereign and its
constituents before wielding state-wide power.  In intrastate
matters, candidates need only be concerned with the issues of the
city or municipality.  Additionally, courts and our constitution
have historically treated states and municipalities very

differently.  They have prescribed states with greater
constitutional powers and protections.  *See* Hess v. Port Auth.
Trans-Hudson Corp., 513 U.S. 30, 47 (1994) (reiterating a well-
established prior holding of the Court that "cities and counties
do not enjoy Eleventh Amendment immunity"); *see also* Chisolm v.
McManimon, 275 F.3d 315, 322 (3d Cir. 2001) ("While Eleventh
Amendment immunity may be available for states, its protections
do not extend to counties") (citing Lincoln County v. Luning, 133
U.S. 529 (1890)).  Therefore, in interstate matters where the
state's concerns are more pronounced, Courts should more
carefully examine and consider the state's compelling reasons for
residency requirements.

Furthermore, unlike the intrastate disenfranchisement
scenario discussed above, the provision at issue in this case
treats everyone from outside the state similarly.  Whether a
Democratic African-American male from California, a Republican
Asian-American female from Topeka or a Native American third
party candidate from Maine, each has the same hurdle to overcome.
All classes of individuals must reside in this State for four
years before they could run for the Office of State Senator.  No
recently re-drawn line, intentionally or not, harms any protected
class of citizens or represents a sinister political plot to
shift some geographical balance of power.  The borders of the
state are static and have remained so and are likely to remain

so.  Consequently, it is difficult to articulate how Plaintiff is treated differently than anyone else from outside the State of New Jersey or how he could be fairly characterized as a victim of anything other than his own volitional decisions as to his domicile.

Finally, the Court acknowledges the principles of comity and the proper balance between the State and Federal Government required by the Tenth Amendment.  Although Plaintiff might one day be an excellent state senator and appears to have many fine qualities that would commend him to public office, it is not for this Court to overturn a provision of the New Jersey Constitution that has been part of the state's standing law for approximately 167 years.[17]  The people of the State of New Jersey, as reflected in their Constitution, have determined that whatever a candidate's personal qualities may be, they must reside within the State for four years before running for the Office of State Senator.  In no way does this ruling preclude Plaintiff from serving either New Jersey or his community in another capacity. It appears that he would qualify to run for state assembly, for

---

[17]  As mentioned above, the people of New Jersey had two opportunities to amend this provision, first in the 1844 revision of the New Jersey Constitution and, most recently, in 1947 and failed to do so.  The power to change this provision and the failure to do so stands for the proposition that a majority of the people of New Jersey want a four-year restriction on candidates for the office of state senator and have always wanted such a restriction.

county freeholder or for municipal office.  Whether one must wait four years to be a state senator is, in the Court's opinion, ultimately not a question of federal constitutional dimension. Rather, such a question is a policy determination.  The right of the people of the State of New Jersey to choose that policy through their elected representatives and to maintain it is protected by the Tenth Amendment. *See* <u>Sununu</u>, 383 F.Supp. at 1290-91 (opining that, in this instance, a conclusion that a residency requirement is unconstitutional "would be an improper intervention into an area reserved to the states by the Tenth Amendment").  It is certainly not the place of this single, unelected Judge to disturb the otherwise legitimate decision of a representative Government.[18]

## III.  CONCLUSION

For the reasons stated both above and in the Court's April 28, 2011 oral decision, Plaintiff's Motion for a Temporary Restraining Order and Order to Show Cause Why a Preliminary Injunction Should Not be Entered was denied.


Date: May 3, 2011                    s/ Noel L. Hillman
At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.

---

[18] Of course the Tenth Amendment can not save state law, even a constitutional provision, that violates the Fourteenth Amendment.  Indeed, the history and function of the Fourteenth Amendment is to act as a check against state action which violates fundamental rights and privileges.  While this Court would not hesitate to strike a different balance in the right case, no such violation has occurred here.